STATE OF CONNECTICUT *v.* DEANERIC DUPAS
(SC 17954)

Rogers, C. J., and Norcott, Katz, Zarella and McLachlan, Js.

Argued March 23—officially released May 26, 2009

*Michael O. Sheehan*, special public defender, with whom was *David A. Moraghan*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Dawn Gallo*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. This appeal concerns the scope of the trial court's discretion to modify a sentence pursuant to General Statutes § 53a-39 (b).[1] The defendant, DeanEric Dupas, appeals directly[2] from the judgment of the trial court denying his motion for modification of his sentence pursuant to § 53a-39 (b). The sole issue in this appeal is whether the trial court abused its discretion in refusing to reduce the defendant's sentence of forty-seven years in consideration of the defendant's postsentence testimony for the state against one of his codefendants, Keith Foster, during Foster's trial. Because we conclude that the trial court acted within its discretion in denying the defendant's motion for modification of his sentence, we affirm the judgment of the trial court.

The state charged the defendant by substitute information with felony murder in violation of General Statutes § 53a-54c,[3] conspiracy to commit kidnapping in the

[1] General Statutes § 53a-39 (b) provides: "At any time during the period of a definite sentence of more than three years, upon agreement of the defendant and the state's attorney to seek review of the sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced."

[2] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[3] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape

first degree in violation of General Statutes §§ 53a-48[4] and 53a-92 (a) (2),[5] and conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-70 (a) (1) and (3).[6] The defendant pleaded guilty as to all three counts, and pursuant to a plea agreement, agreed with the state to a sentencing range of thirty-five to fifty years. In January, 2005, the trial court sentenced the defendant to a total effective sentence of forty-seven years in prison. In February, 2006, state police officers approached the defendant and asked if he would be willing to cooperate with the state in the prosecution of two codefendants, Foster and June Bates Seger. On March 28, 2006, the state and the defendant entered into an agreement pursuant to which the defendant agreed, among other things, to testify at Foster's trial. In exchange, and only upon the

in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] General Statutes § 53a-92 (a) provides: "A person is guilty of kidnapping in the first degree when he abducts another person and: (1) His intent is to compel a third person (A) to pay or deliver money or property as ransom or (B) to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function."

[6] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or . . . (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present . . . ."

completion of the proceedings against Foster and Seger, the state agreed to consent to a sentence modification hearing pursuant to § 53a-39 (b), at which the state would apprise the court of the nature and extent of the defendant's truthful cooperation. The defendant testified at Foster's trial; subsequent to Foster's conviction, Seger pleaded guilty.

At the beginning of the defendant's sentence modification hearing on July 11, 2007, the trial court informed the parties that, in preparation for the hearing, it had reviewed the defendant's sentencing memorandum and amended sentencing memorandum, the transcript of the defendant's plea, the letter of agreement between the state and the defendant and the transcripts of the defendant's testimony during Foster's trial. The state did not oppose the defendant's motion and, as required by the agreement, informed the court of the defendant's cooperation at Foster's trial, stating that the defendant had provided "evidence that was probative on the issue[s] of planning, cooperation, conspiracy, motive, sexual assault, kidnapping and murder." The court also heard statements from the victim's mother, Cynthia Measles, and the victim's two sisters, Jennifer Johnson and Victoria Measles, all of whom opposed any sentence reduction. The court issued a brief memorandum of decision on July 13, 2007, denying the defendant's motion for modification of his sentence and offering the following explanation: "The court, after consideration of the arguments of counsel and review of the transcripts, finds that the sentence as imposed, based on the heinous nature of this crime and the [defendant's] involvement, is fair, just and reasonable." This appeal followed.

The defendant contends that the trial court's refusal to reduce his sentence in light of his postsentence cooperation in the prosecution of Foster constituted an abuse of discretion. The state responds that the court

was not required to reduce the defendant's sentence and that the court acted within its discretion in denying the defendant's motion. We agree with the state.

We never have reviewed a trial court's judgment granting or denying a motion to modify a sentence pursuant to § 53a-39 (b). As with all sentencing decisions, however, "when the sentence imposed is within the limits fixed by statute for the offenses charged," we review the court's determination for abuse of discretion. *State* v. *Baldwin*, 224 Conn. 347, 370, 618 A.2d 513 (1993); see also *State* v. *Rose,* 168 Conn. 623, 638, 362 A.2d 813 (1975). Moreover, in arriving at its sentencing determination, the sentencing court "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come." (Internal quotation marks omitted.) *State* v. *Anderson,* 212 Conn. 31, 47, 561 A.2d 897 (1989). That this broad discretion applies with equal force to a sentencing court's decision regarding a sentence modification is supported by the wording of § 53a-39 (b), which provides in relevant part that "the sentencing court or judge *may,* after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced." (Emphasis added.)

"In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *State* v. *Preston,* 286 Conn. 367, 377, 944 A.2d 276 (2008). Generally speaking, under this deferential standard, "[w]here the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion." *State* v. *Baldwin,* supra, 224 Conn. 371.

It is undisputed that the original sentence imposed by the trial court was within the applicable statutory limitations and within the thirty-five to fifty year sentencing range agreed upon by the state and the defendant.[7] The defendant nonetheless claims that it was an abuse of discretion for the court to refuse to reduce his original sentence. That claim, however, is not reconcilable with the broad discretion conferred upon a sentencing court. Although § 53a-39 (b) provides that the trial court *may* reduce a defendant's sentence "for good cause shown," the statute does not limit the information a court may consider in determining whether a defendant has shown good cause for the requested modification, nor does it suggest that the court's discretion is somehow limited. In arriving at its decision to deny the defendant's motion for a modification of his sentence, the trial court engaged in the type of broad inquiry that we have deemed appropriate in sentencing determinations. See *State* v. *Anderson*, supra, 212 Conn. 47. Despite the brevity of the trial court's memorandum of decision, the record demonstrates that the court's decision was based on a thorough review of *all* of the relevant information. Specifically, the court stated at the beginning of the sentence modification hearing that it had considered the defendant's sentencing memoranda, the transcript of the defendant's plea and sentencing hearings, the letter of agreement between the defendant and the state, and the transcripts of the defendant's testimony at Foster's trial. During the modification hearing, the defendant detailed the extent of his

---

[7] The defendant could have received a sentence of up to sixty years for the conviction of felony murder; see General Statutes §§ 53a-35a (2) and 53a-35b; up to twenty-five years for the conviction of conspiracy to commit kidnapping in the first degree; see General Statutes § 53a-35a (4); and up to twenty-five years for the conviction of conspiracy to commit sexual assault in the first degree; see General Statutes § 53a-35a (4); for a possible total effective sentence of 110 years if the sentences were imposed consecutively by the court.

cooperation with the state, arguing that he should receive some "consideration" for that cooperation. Also during the hearing, the state acknowledged the value of the defendant's testimony, and admitted that the cooperation of codefendants had been necessary in order for the state to obtain a conviction against Foster. The state further acknowledged that the evidence provided by the defendant was probative on the issues of "planning, cooperation, conspiracy, motive, sexual assault, kidnapping and murder." The state also pointed out, however, that the defendant originally had been charged with capital felony, and that the sentence the defendant ultimately received as a result of the original plea bargaining process was substantially less than the sentence that he otherwise could have faced. See footnote 7 of this opinion.

The court's statement in its memorandum of decision that it had arrived at its determination "after consideration of the arguments of counsel and review of the transcripts" further emphasizes that the court considered all of the relevant materials, including the transcripts of the defendant's testimony at Foster's trial. The memorandum of decision also reveals, however, that of all the relevant information considered by the court, it ultimately considered the "heinous nature of this crime and the [defendant's] involvement," to be the determining factor in denying the defendant's motion for modification of his sentence.

It was not an abuse of discretion for the court to rely on the horrific nature of this crime in denying the defendant's motion for modification. We have reviewed the materials relied on by the sentencing court, including the transcripts of the defendant's plea and sentencing hearings, and the defendant's testimony at Foster's trial. All of these materials attest to the heinous nature

of this crime.[8] This information was just as relevant at the modification hearing as it was during the defendant's original sentencing. The trial court did not abuse its discretion in determining, based on the nature of this crime, that the defendant's original sentence was "fair, just and reasonable" under the totality of the circumstances considered by the trial court.

The defendant argues that the trial court's denial of his motion for modification of his sentence was an abuse of discretion because the court's decision "assigned no value" to the defendant's postsentence cooperation with the state. Put another way, the defendant appears to argue that because his original sentence was determined prior to his cooperation with the state, his subsequent cooperation *required* that the sentencing court reduce his sentence, and that the court had discretion only as to the amount of the reduction. Any other result, according to the defendant's logic, signifies that the trial court gave no consideration at all to the defendant's postsentence cooperation. In connection with this claim, the defendant also contends that the only information that the trial court could consider in determining whether to grant the defendant's motion to modify his sentence was new information that had not been available during the original sentencing hearing because the information that had been available to the court at the time of sentencing already had been factored into the defendant's original sentence.

We find the defendant's argument unpersuasive. His claim relies on the fact that the court's memorandum

---

[8] These materials reveal that the defendant and seven other persons kidnapped the thirteen year old victim, then brought her to a remote location where she was terrorized, beaten, gang-raped and murdered. Members of the group then rolled the victim's body in a tarp, wrapped it in chains, and dumped the victim's body in the Housatonic River. Although these materials are inconsistent as to some details, they all are consistent with the conclusion that the defendant was a major actor in the crimes against the victim.

of decision did not state expressly why the court had determined that the defendant's postsentence cooperation was insufficient to justify a reduction of his sentence. The defendant conceded at oral argument before this court, however, that he did not file a motion for articulation of the memorandum of decision. Moreover, as we already have noted, the memorandum of decision, although brief, stated that the court considered the arguments of counsel and the transcripts in arriving at its decision. Thus, although the court did not explain precisely why it had considered evidence of the defendant's cooperation insufficient to justify a reduction in the defendant's sentence, it is clear from the memorandum of decision that the court considered that cooperation in ruling on the motion. The memorandum of decision also clearly stated the basis for the court's denial of the motion—the heinous nature of the crime and the defendant's involvement in it. A reasonable interpretation of the memorandum of decision is that the court considered the defendant's cooperation, but deemed that cooperation insufficient, in light of the heinous nature of the crime, and the fact that the defendant was a main actor in the kidnapping, rape and murder of the victim, to justify a reduced sentence. This reading is consistent with the court's conclusion, following the modification hearing, that the original sentence imposed was "fair, just and reasonable."

As part of his claim that only his postsentence cooperation was relevant, the defendant points out that it was the only evidence not factored into his original sentence. He appears to claim that, because the only postsentence development is one that would support a more lenient sentence, he was entitled to a reduction.[9] There are several premises underlying the defendant's

[9] The defendant also suggests that the trial court's decision potentially could have a chilling effect on future codefendants who are asked to cooperate with the state. We decline to rest our decision on speculation.

argument, however, that are irreconcilable with the broad discretion exercised by a sentencing court. First, the defendant presupposes that the court could not examine the entire record in determining whether his postsentence cooperation justified a sentence modification, and was limited to considering only information that had been unavailable during the original sentencing, and, therefore, could not consider the facts of the crime, as well as the defendant's subsequent attempts to cover up the murder, in ruling on the defendant's motion. This premise is completely at odds with the discretion possessed by a sentencing court. As we have stated previously in this opinion, that discretion is broad, as is the inquiry conducted by the sentencing court. See *State* v. *Baldwin,* supra, 224 Conn. 370–71; *State* v. *Anderson,* supra, 212 Conn. 47. The court properly examined the totality of the circumstances in ruling on the defendant's motion. Second, the defendant presumes that, because he cooperated with the state, the court was obligated to grant his motion for modification, and had discretion only as to the amount of the reduction. The defendant cites to no authority for this proposition; nor does he make any attempt to reconcile this claim with the broad discretion of the sentencing court—as he cannot. Lastly, even if we were to accept the defendant's claim that the court was limited to considering only information that was unavailable at the original sentencing, the defendant's argument would fail because there was new information available to the court that would have justified a denial of the defendant's motion. Specifically, during his testimony at Foster's trial, the defendant stated that he carried the victim to the river and held her feet while another codefendant stepped on her neck and held her head under water until she drowned. In the defendant's earlier accounts of the victim's murder, not only did he fail to admit participating in the actual killing of the victim, but he

also claimed that he was in the woods being sick when that codefendant murdered her.[10] It is possible that the trial court—in a proper exercise of its discretion—could have given weight to the fact that the defendant's testimony at Foster's trial admits to a much greater and more culpable role in the murder of the victim. According to the defendant's logic, the trial court would have abused its discretion in doing so, even though the information that the defendant provided at Foster's trial was highly relevant information that the trial court did not have before it at the original sentencing. That contention, however, would be inconsistent with the defendant's claim that the trial court properly could consider new information in ruling on the defendant's motion.

The judgment is affirmed.

In this opinion the other justices concurred.

[10] During both the plea hearing and the sentencing hearing, the state notified the court that certain codefendants had made statements to the police that were inconsistent with the defendant's claim that he was in the woods when the victim was being murdered. These codefendants claimed that the defendant actively had participated in the murder of the victim.