******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TIMOTHY BRELSFORD
(AC 46093)

Elgo, Cradle and Westbrook, Js.

*Syllabus*

The defendant, who had previously been convicted, following a guilty plea, of the crimes of kidnapping in the second degree with a firearm, attempt to commit murder, robbery in the first degree with a deadly weapon, and two counts of risk of injury to a child, filed a motion for sentence modification pursuant to statute (§ 53a-39). In his motion, the defendant provided evidence of, inter alia, his completion of several rehabilitative programs during his incarceration. In denying the defendant's motion, the court stated that it had considered the factors set forth in the statute (§ 54-125a (f) (4)) governing parole eligibility and suitability and concluded that the defendant had not established good cause to modify his sentence pursuant to § 53a-39 when balanced against the facts and harm created by the serious crimes he had committed. On the defendant's appeal to this court, *held* that the defendant could not prevail on his claim that the trial court abused its discretion in finding that he had failed to establish good cause to modify his sentence pursuant to § 53a-39: although the defendant argued that the weight and value that the court assigned to the statutory parole framework when assessing good cause pursuant to § 53a-39 was inappropriate, he conceded that the trial court was free to consider the factors in § 54-125 in arriving at its conclusion; moreover, the court did not limit its consideration of the defendant's motion to the factors enumerated in § 54-125, and, although the defendant argued that the court should have relied more heavily on his rehabilitation and certain other factors, he did not cite any legal authority that governs the degree of weight a court must afford factors that it considers in determining whether good cause has been established.

Argued November 9, 2023—officially released July 30, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of kidnapping in the second degree with a firearm, attempt to commit murder, criminal use of a firearm during the commission of a felony, carjacking, robbery in the first degree, and two counts of risk of injury to a child, brought to the Superior Court in the judicial district of New Haven, where the defendant

was presented to the court, *Devlin, J.*, on a plea of guilty to kidnapping in the second degree, attempt to commit murder, robbery in the first degree with a deadly weapon, and two counts of risk of injury to a child; judgment of guilty in accordance with the plea; thereafter, the state entered a nolle prosequi as to the remaining charges; subsequently, the court, *Harmon, J.*, denied the defendant's motion for sentence modification, and the defendant appealed to this court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Alexander Beck*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Timothy Brelsford, appeals from the judgment of the trial court denying his motion for modification of his sentence pursuant to General Statutes § 53a-39. On appeal, the defendant claims that the court abused its discretion in finding that he had failed to establish good cause to modify his sentence. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts related to the defendant's underlying conviction, as set forth in the trial court's memorandum of decision on the defendant's motion for a sentence modification, and procedural history are relevant to this appeal. "The defendant's conviction stems from an armed robbery in the town of Hamden, of which he was also convicted. The defendant [fled to] . . . New Haven, where a police officer observed the defendant on a corner talking to a young boy. When the officer approached [the defendant], [the defendant] produced

a firearm and placed it to the head of the police officer, [ordering] him to drive his motorcycle, with [the defendant] as a passenger, to Bridgeport in an attempt to flee from the criminal activity and the pursuit of other officers. The police officer rolled the motorcycle while [the defendant] was a passenger. Both parties fell off the motorcycle and a gun battle between [the defendant] and the police officer ensued. [The defendant] fired shots at the police officer on a crowded street and subsequently ran to a vehicle where there were two adult females and two children [inside]. The defendant ordered the two adults out of the vehicle and carjacked the vehicle, [continuing] to fire shots at police officers while the two children were in the rear seat of the vehicle. The defendant subsequently crashed the vehicle and was apprehended when he attempted to flee on foot. The two minor children suffered minor injuries in the crash, [including] a bullet wound to the wrist of one of the children."

The defendant subsequently was arrested and, on September 15, 1995, pleaded guilty to kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a, attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, robbery in the first degree with a deadly weapon in violation of General Statutes § 53a-134 (a) (2), and two counts of risk of injury to a child in violation of General Statutes § 53-21. On November 20, 1995, the court, *Devlin, J.*, sentenced the defendant to a total effective sentence of forty years of incarceration.[1]

---

[1] The defendant is currently serving a sentence of forty-six years and six months of incarceration. The record reflects that the defendant had other cases pending at the time of his sentencing in the present case. At the defendant's sentencing hearing on November 20, 1995, State's Attorney James Clark noted that the defendant had "committed armed robberies in Hamden on that same day . . . within an hour or so of the beginning of this sequence of events, and a day earlier in Guilford. In addition to that, he has pending, I believe, seven felony and two misdemeanor cases in other jurisdictions, which we know as a practical matter are going to be wrapped up into this sentence once this sentence is imposed . . . ."

On November 16, 2021, the defendant filed the present motion for sentence modification as a self-represented party, seeking to suspend execution of the remaining unexecuted portion of his term of incarceration. The defendant attached to his motion exhibits highlighting his medical conditions and completion of several rehabilitative programs. The state did not oppose a hearing on the motion.

On August 30, 2022, the court, *Harmon, J.*, held a hearing on the defendant's motion. The defendant, a victim's advocate, and the state addressed the court. The defendant argued that, having been incarcerated for almost twenty-eight years, he is "a changed person" and "a better person," that he is "very, very sorry for what happened back then," and that "[d]rug addiction [had] compelled [him]" to commit the crimes at issue in this case. He explained that he now has various health concerns and that he just wants to "finish this."

The victims did not take a position with respect to the defendant's motion for sentence modification. The victim's advocate, however, shared a statement from the mother of the children in the car that "the carjacking . . . had an effect on [her] entire family [and] on [her] entire family's lives" but that "[she is] a Christian and believe[s] in forgiveness . . . ."

The state highlighted the defendant's extensive criminal history and asked the court "not to modify the sentence . . . based on the seriousness of all these offenses [at issue in the present case] and . . . the long-term, lifelong effect upon the victims of these crimes."

In its memorandum of decision, issued on September 16, 2022, the court, *Harmon, J.*, found that, at that time, the defendant had a maximum release date of December 28, 2027, noting that the defendant earns statutory good time credit, seven day job credit, and outstanding meritorious performance award credit, all of which have reduced his maximum release date.

In a memorandum of decision dated September 16, 2022, the court denied the defendant's motion for sentence modification. The court noted that, although § 53a-39 does not define "good cause," it has been commonly defined as " 'a legally sufficient reason.' " The court explained that "it is with this understanding and standard, considering the accepted objectives of sentencing as well, that this court reviews the information presented to determine whether good cause, 'a legally sufficient reason,' has been established by the defendant to modify his sentence." The court then reviewed the evidence presented by the defendant, recounting the age of the defendant when he was sentenced, his current age, and the "training and efforts at rehabilitation" the defendant had made during his twenty-eight years of incarceration. The court further noted that the defendant personally addressed the court, apologized to the victims for his actions, addressed his drug addiction and discussed "the good he could perform for the community and his family if granted early release."

The court stated that, "[i]n analyzing whether 'a legally sufficient reason' exists to warrant a modification of the defendant's sentence, the court has considered whether the defendant has demonstrated substantial rehabilitation since the date the crime was committed." The court further reasoned that, "[w]hile not directly applicable to . . . § 53a-39, the statute governing parole eligibility and suitability, General Statutes § 54-125a (f) (4),[2] provides an instructive and useful

---

[2] General Statutes § 54-125a (f) (4) provides in relevant part: "After [a] hearing [to determine eligibility for parole release], the [Board of Pardons and Paroles] may allow [a] person to go at large on parole with respect to any portion of a sentence that was based on a crime or crimes committed while such person was under eighteen years of age if the board finds that such parole release would be consistent with the factors set forth in subdivisions (1) to (4), inclusive, of subsection (c) of section 54-300 and if it appears, from all available information . . . that [among other things] . . . (C) such person has demonstrated substantial rehabilitation since the date such crime or crimes were committed considering such person's character, background and history, as demonstrated by factors, including, but not limited to, such

framework in assessing the existence of 'good cause' sufficient to modify a sentence . . . particularly since the factors enumerated must be . . . evaluated with the objective of being consistent with the factors set forth in [General Statutes] § 54-300.'"[3] (Footnote added.) Accordingly, the court explained that "[f]actors that have been examined include, but are not limited to: (1) the gravity of his crime; (2) correctional record and length of time incarcerated; (3) his age and circumstances at the time of the commission of the crime; (4) whether he has demonstrated remorse and increased maturity since the date of the offense; (5) whether he has contributed to the welfare of other persons through service while incarcerated; and (6) the degree [to] which he has fully availed himself of opportunities for growth, rehabilitation, and contribution within the correctional system considering the nature and circumstances of the crime he committed."

The court concluded that, "after a review and consideration of the information and material presented, and

person's correctional record, the age and circumstances of such person as of the date of the commission of the crime or crimes, whether such person has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes, such person's contributions to the welfare of other persons through service, such person's efforts to overcome substance abuse, addiction, trauma, lack of education or obstacles that such person may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system, whether the person has also applied for or received a sentence modification and the overall degree of such person's rehabilitation considering the nature and circumstances of the crime or crimes."

[3] General Statutes § 54-300 provides in relevant part: "(c) In fulfilling its mission, the [Connecticut Sentencing Commission] shall recognize that: (1) The primary purpose of sentencing in the state is to enhance public safety while holding the offender accountable to the community, (2) sentencing should reflect the seriousness of the offense and be proportional to the harm to victims and the community, using the most appropriate sanctions available, including incarceration, community punishment and supervision, (3) sentencing should have as an overriding goal the reduction of criminal activity, the imposition of just punishment and the provision of meaningful and effective rehabilitation and reintegration of the offender, and (4) sentences should be fair, just and equitable while promoting respect for the law."

with contemplation of the proper standard," the defendant had not established good cause to modify his sentence "when balanced against the facts and harm created by the serious crime he committed." The court went on to explain that its decision was "not meant to lessen or nullify the positive steps the defendant has taken during his period of incarceration or his ability to succeed once he is released. However, the court felt that, although the defendant showed remorse . . . the gravity of the crime and harm to the victims and society at large requires that the request for sentence modification be denied at this time."

On September 28, 2022, the defendant filed a "motion for rectification," in which he argued that the court, in ruling on his motion for sentence modification, had improperly failed to consider the fact that he had been on mind-altering drugs at the time he committed the underlying offenses. He further contended that "[a] criminal's state of mind . . . must be considered by the court where [the defendant's] motion for release is at issue, and to leave it out is plain error." On September 30, 2022, the court, *Harmon*, *J.*, held a hearing on the defendant's motion, which the court treated as a motion for reconsideration. In a memorandum of decision dated December 2, 2022, the court denied the defendant's motion for reconsideration, explaining that "when rendering its initial decision [on the motion for sentence modification], [the court] was aware of the drug dependency and the effect it may have had in contributing to the illegal activity by [the defendant]. The court must still consider the gravity of the crime. The offense put both police officers and innocent civilians at risk and resulted in an injury to a young child. Based on the gravity of the offense, the court does not believe a sentence modification is appropriate at this time . . . ." This appeal followed.

On appeal, the defendant claims that the court abused its discretion in finding that he had failed to establish good cause to modify his sentence pursuant to § 53a-39. We disagree.

We begin by setting forth the standard of review and legal principles relevant to this claim. Section 53a-39 provides in relevant part that "the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced. . . ."[4]

"[I]n arriving at its sentencing determination, the sentencing court may appropriately conduct an inquiry

[4] General Statutes § 53a-39 provides in relevant part: "(a) Except as provided in subsection (b) of this section, at any time during an executed period of incarceration, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced.

"(b) On and after October 1, 2021, at any time during the period of a sentence in which a defendant has been sentenced prior to, on or after October 1, 2021, to an executed period of incarceration of more than seven years as a result of a plea agreement, including an agreement in which there is an agreed upon range of sentence, upon agreement of the defendant and the state's attorney to seek review of the sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced. . . ."

We note that § 53a-39 has been amended since the events underlying this appeal; see Public Acts 2023, No. 23-47, § 1; those amendments have no bearing on the merits of this appeal. Accordingly, we refer to the current revision of the statute.

We also note that the defendant, in his appellate brief, asserts that the legislative intent behind earlier amendments to § 53a-39 in 2021 and 2022 "appears . . . [to have been] largely directed at ushering the earlier release of rehabilitated inmates." We decline to opine as to the intent of the legislature in amending the statute because it is not necessary to the resolution of the defendant's claim on appeal.

broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . [T]his broad discretion applies with equal force to a sentencing court's decision regarding a sentence modification . . . . Accordingly, we review a court's judgment granting or denying a motion to modify a sentence for abuse of discretion. . . . An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . As such, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Generally speaking, under this deferential standard, [w]here the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Martin G.*, 222 Conn. App. 395, 403–404, 305 A.3d 324 (2023), cert. denied, 348 Conn. 944, 308 A.3d 34 (2024).

The defendant argues that the trial court abused its discretion in determining that he had not established good cause to modify his sentence, in that the court improperly weighed certain factors and failed to consider others. First, the defendant contends that the court improperly relied solely on the severity of the defendant's offense when denying his modification. The court's decision, which plainly reflects that it weighed several factors, belies that contention and does not merit further discussion.

The defendant also argues that "[i]t is inappropriate for the courts to rely upon the statutory parole framework when assessing good cause pursuant to § 53a-39" because that reliance necessarily "constrains the 'unlimited' nature of the appropriate inquiry espoused

[in our case law]." Although the defendant argues that "the weight and value that the court assigned to this framework was inappropriate, particularly given the different functions of the trial court and the Board of Pardons and Parole," he concedes that "the trial court was free to consider [the § 54-125 (f) (4)] factors in arriving at its conclusion . . . ." Indeed, this court has held that, "in reviewing applications for sentence modifications of definite sentences, [the sentencing court] performs a function similar to that of a parole board"; *State* v. *Millhouse*, 3 Conn. App. 497, 500–501, 490 A.2d 517 (1985); and has affirmed the consideration of § 54-125 (f) (4) factors when considering sentence modifications. See *State* v. *Martin G.*, supra, 222 Conn. App. 405–406. This is consistent with our well settled law that a sentencing court's broad discretion also applies to its decisions regarding sentence modification and it "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come." (Internal quotation marks omitted.) *State* v. *Dupas*, 291 Conn. 778, 783, 970 A.2d 102 (2009).[5]

Moreover, the court did not limit its consideration of the defendant's motion to the factors enumerated in the parole statute. Although the defendant argues that

---

[5] The defendant asks this court to "provide guidance to the lower courts regarding proper considerations that should inform the [good cause] standard" in the context of § 53a-39. He cites *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 31–35, 244 A.3d 171 (2020), aff'd, 343 Conn. 424, 274 A.3d 85 (2022), as an example of the type of guidance this court should provide. In response to the defendant's concern, *Martin G.*, and now the present case, provide a nonexclusive list of considerations that may properly inform a court's ruling on a motion for sentence modification in similar cases. We decline, however, to provide further guidance at this time given the broad discretion of the courts in this area; see *State* v. *Martin G.*, supra, 222 Conn. App. 404; and the " 'largely unlimited' " information a court can consider in ruling on a motion for sentence modification. *State* v. *Dupas*, supra, 291 Conn. 783.

the court should have relied more heavily on his rehabilitation and certain other factors,[6] he does not cite any legal authority that governs the degree of weight a court must afford factors that it considers in determining whether good cause has been established, nor are we aware of any. Here, the court expressly considered the steps the defendant has taken toward rehabilitation but concluded that those steps did not outweigh other factors that it considered. The court's consideration of all of these factors was consistent with the broad discretion afforded to courts in ruling on motions for sentence modification.[7] We therefore conclude that the court did not abuse its discretion in determining that the defendant failed to establish good cause to warrant a sentence modification.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The defendant contends that the court should have considered: "(1) whether the defendant's sentence comports with contemporary norms in sentencing, (2) whether and what goals of sentencing will be better met by the defendant's release or continued incarceration, (3) the defendant's life expectancy and ability to contribute to society upon reentry, (4) the likelihood of recidivism, (5) whether the court may impose supervision to better assist with the defendant's reintegration needs or to promote the safety of society, (6) whether scientific advances since the time of the defendant's sentencing place the defendant's original sentence in a different light, (7) whether the 'new' information presented by the defendant since the time that he was sentenced warrants a departure from the original sentence, and (8) input from any victim(s)." (Footnotes omitted.)

[7] The defendant also argues that the court abused its discretion because, even if the court properly considered the factors it used in making its determination as to good cause, those factors weigh in favor of his release and the state's arguments to the contrary are weak. It is axiomatic that, in determining whether there has been an abuse of discretion, this court "[does] not review the evidence to determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Alder* v. *Alder*, 60 Conn. App. 612, 613, 760 A.2d 1263 (2000).