******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* WILLIAM TOSTE
(AC 47093)

Bright, C. J., and Alvord and Westbrook, Js.*

*Syllabus*

The defendant, who had been convicted of murder and sentenced to a term of imprisonment of twenty-five years to life with a mandatory minimum of twenty-five years, appealed from the trial court's denial of his motion for sentence modification. The defendant claimed that the court abused its discretion in finding that he had failed to establish good cause to modify his sentence. *Held*:

The trial court did not abuse its discretion in determining that the defendant failed to establish good cause to warrant a sentence modification, as the court properly considered the relevant sentencing factors and determined that the seriousness of the offense, the impact on the victim's family, and the fact that the Board of Pardons and Paroles had denied the defendant's applications for parole outweighed the defendant's age, his intellectual disabilities and the length of time served.

Argued January 15—officially released April 8, 2025

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Callahan, J.*; verdict and judgment of guilty; thereafter the court, *Hernandez, J.*, denied the defendant's motion for sentence modification, and the defendant appealed to this court. *Affirmed*.

*Naomi T. Fetterman*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, were *Joseph Corradino*, state's attorney, and *Michael DeJoseph*, supervisory assistant state's attorney, for the appellee (state).

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Opinion*

BRIGHT, C. J. The defendant, William Toste, appeals from the judgment of the trial court denying his application for a sentence modification pursuant to General Statutes § 53a-39. On appeal, the defendant claims that the court abused its discretion in finding that he had failed to establish good cause to modify his sentence. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 1981, the defendant was convicted of murder in violation of General Statutes § 53a-54a for the December 20, 1974 killing of his close friend's mother.[1] After he fled the scene of the murder in the victim's stolen car, the defendant was involved in two accidents, one of which resulted in the death of a second person. The defendant was sentenced to a term of imprisonment of twenty-five years to life, with a mandatory minimum of twenty-five years.[2] The defendant's conviction was affirmed by our Supreme Court. See *State* v. *Toste*, 198 Conn. 573, 504 A.2d 1036 (1986).

In 2013 and 2019, the Board of Pardons and Paroles (board) denied the defendant's applications for parole.[3]

---

[1] The defendant, who was twenty-four years old at the time, "grabbed a knife and stabbed [the victim] in the back approximately twenty times. He also took a longer knife, a fork and a nail file and stabbed her again repeatedly." *State* v. *Toste*, 198 Conn. 573, 574, 504 A.2d 1036 (1986).

[2] The defendant was originally tried, convicted of, and sentenced in 1976 for the murder of the first victim and for manslaughter in violation of General Statutes § 53a-55 for the death of the second victim resulting from the car accident. On appeal, our Supreme Court reversed the judgment with respect to the murder conviction and ordered a new trial because of an erroneous charge to the jury on an insanity defense. See *State* v. *Toste*, 178 Conn. 626, 424 A.2d 293 (1979). The defendant was retried solely on the murder charge. It is unclear whether he did not appeal from the manslaughter conviction or whether the judgment with respect to that conviction was also reversed, and the state chose not to pursue that charge at the new trial. The resolution of the manslaughter charge is immaterial to our analysis.

[3] At both proceedings, the victim's advocate, on behalf of the family of the manslaughter victim, strongly opposed any parole application. Otherwise, there is very little information available regarding the board's denials of the defendant's applications for parole.

In 2021, the defendant filed an application for the commutation of his sentence, which the board also denied.

In April, 2023, the defendant filed the underlying application for a sentence modification, seeking a reduction of his sentence, of which he had already served more than forty-eight years. In his memorandum in support of his application, the defendant contended that "good cause exists to grant the application and to reduce his sentence to time served." The defendant claimed that his intellectual disability,[4] age and physical condition,[5] rehabilitation and remorse, and purported plan for reentry outside prison all demonstrated an adequate showing of "good cause" to warrant the modification of his sentence. In June, 2023, the trial court, *Hernandez, J.*, held a hearing on the defendant's application. The court heard from the defendant's counsel, the defendant, the state, and the victim's advocate. The defendant also submitted to the court a psychological report by Andrew W. Meisler, who had evaluated the defendant for his application for sentence modification, and who opined that the defendant, although exhibiting a lower risk of recidivism and having a "reasonably good" "prognosis for safe and effective management in an assisted living facility," nevertheless exhibited "poor social judgment and impulse control" with very poor insight and judgment.

At the conclusion of the hearing, the trial court denied the modification. In so ruling, the court stated: "I do not believe that any of the circumstances that have

---

[4] Around the time of his first criminal trial, psychological testing indicated that the defendant had an IQ between sixty-eight and seventy-one. See *State* v. *Toste*, supra, 198 Conn. 579. A psychological evaluation performed by Andrew W. Meisler, who was retained by the defendant in connection with his application, found that this IQ placed him at the "intellectual level of a child aged seven to nine."

[5] When the application for a sentence modification was filed, the defendant was seventy-two years old, weighed less than 150 pounds, and walked with a cane.

been presented to me at this time rise to the level of good cause for granting [the defendant's] application for sentence modification. I've taken into consideration the seriousness of the offenses, the impact on the victims and the victim's family, and quite frankly on the fact that the [board] denied [the defendant's] application for release on an indeterminant sentence . . . . I am not bound by their findings, but I do rely in part on their assessment of [the defendant's] suitability for release into the community." This appeal followed.

On appeal, the defendant claims that the trial court abused its discretion when it denied his application for a sentence modification. We are not persuaded.

We begin with the standard of review and legal principles relevant to this claim. General Statutes § 53a-39 (a) provides in relevant part that "the sentencing court or judge *may*, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced." (Emphasis added.) "Although § 53a-39 [(a)] provides that the trial court may reduce a defendant's sentence 'for good cause shown,' the statute does not limit the information a court may consider in determining whether a defendant has shown good cause for the requested modification, nor does it suggest that the court's discretion is somehow limited." (Emphasis omitted.) *State* v. *Dupas*, 291 Conn. 778, 784, 970 A.2d 102 (2009).

"[I]n arriving at its sentencing determination, the sentencing court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . [T]his broad discretion applies with equal force to a sentencing court's decision

regarding a sentence modification . . . . Accordingly, we review a court's judgment granting or denying a[n] [application for a] . . . sentence [modification] for abuse of discretion. . . . An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . As such, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *State* v. *Brelsford*, 227 Conn. App. 53, 61, 319 A.3d 763, cert. denied, 350 Conn. 912, 324 A.3d 142 (2024).

In the present case, the defendant claims that the trial court abused its discretion in two ways when it determined that he had not established good cause to modify his sentence.[6] In particular, he argues that "[t]he

[6] The defendant spent much of his appellate briefs arguing that, because the societal and legal understandings of the effect of youth and mental disabilities on culpability have changed since the defendant was sentenced in 1981, the trial court was required to give significant, if not dispositive, weight to the fact that the defendant had a mental disability that gave him the functional level of a child aged seven to nine years old. The defendant seems to suggest that, given the doctrinal shift toward sentencing adjustments for juveniles and the mentally impaired, a proper exercise of discretion virtually required some modification to the defendant's sentence. We are not persuaded.

First, the defendant's intellectual impairments and functional youth do not render him a juvenile for purposes of the law. See *Haughey* v. *Commissioner of Correction*, 173 Conn. App. 559, 571, 164 A.3d 849 ("[s]imply put, an offender who has reached the age of eighteen is not considered a juvenile for sentencing procedures and eighth amendment protections"), cert. denied, 327 Conn. 906, 170 A.3d 1 (2017). Second, there is no indication in the record that the trial court did not consider these factors in reaching its determination. Indeed, the defendant's counsel brought these factors to the court's attention during the hearing, stating: "I think it's imperative to shed light on the critical distinctions that were tragically overlooked when [the defendant] was sentenced: his intellectual and psychiatric disabilities. And so, when we seek compassionate justice, we recognize the profound impact that these disabilities have on his cognitive function and acknowledge how we have advanced as a society in the meantime in addressing the needs of individuals like him." Although the court did not expressly address this

trial court's reliance on the [board's] denial [of his appli-
cations for parole was] completely improper" and that
the board's actions could not "justify the denial of the
pending sentence modification . . . ." He further
argues that the overarching goals of sentencing—deter-
rence, retribution, incapacitation, and rehabilitation—
no longer apply to him, given his mental impairment,
health and age, and substantial improvements[7] while
imprisoned. Both arguments are unavailing.

We first address the defendant's contention that the
trial court improperly relied on the board's decisions
denying the defendant parole because the court had "no
information" as to why the board denied the defendant's
requests for parole and because he was without counsel
at the parole hearings.[8] We are not persuaded.

First, it was not improper for the trial court to con-
sider the outcome of those hearings. As we previously

argument in denying the defendant's application, it did say that the circum-
stances presented did not constitute good cause. Thus, we presume that
the court considered counsel's argument and Meisler's report as part of
the circumstances it considered when determining whether to modify the
defendant's sentence. See *Brett Stone Painting & Maintenance, LLC v.
New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013) ("In
Connecticut, our appellate courts do not presume error on the part of the
trial court. . . . Rather, we presume that the trial court, in rendering its
judgment . . . undertook the proper analysis of the law and the facts."
(Citations omitted; internal quotation marks omitted.)). Consequently, we
reject the defendant's argument.

[7] The defendant's memorandum in support of his application provided the
following: "[The defendant] has maintained employment while incarcerated
over the span of the last forty-eight years and through different institutions.
[The defendant's] work reports comment on his reliability and trustworthi-
ness. . . . The reports show his desire to be a part of a team, to better his
surroundings . . . . While in prison he has learned the sort of social interac-
tions and courtesies necessary to live and work in society." (Citations omit-
ted.)

[8] As the defendant notes in his appellate brief, "[t]he record is entirely
bereft of when [the defendant] appeared before the board, for what purpose,
what evidence, if any, was presented, and what the basis was for their
decision, whatever decision that may be—commutation and/or parole appli-
cation."

have noted, in reaching a determination regarding sentence modification, "the sentencing court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come." (Internal quotation marks omitted.) *State* v. *Brelsford*, supra, 227 Conn. App. 61. We see no reason why the trial court could not consider, as one piece of relevant information, that the board, which, according to the court, "seem[s] to have a real grasp on where, when, and how people are suitable for release into the community," twice decided that the defendant should not be released on parole. The defendant does not dispute that the board did not grant him parole or that the court's description of the board's experience in making such decisions was inaccurate. Furthermore, this court has held that it is appropriate when ruling on an application for modification for the trial court to consider, as one factor, the statutory factors considered by the board when deciding whether to grant parole. See *State* v. *Brelsford*, supra, 62–63 (trial court did not abuse its discretion when it considered statutory parole framework in its denial of defendant's application for modification because, "in reviewing applications for sentence modifications of definite sentences, [the sentencing court] performs a function similar to that of a parole board" (internal quotation marks omitted)).

Second, the record is clear that the board's denials of parole were just one factor the trial court considered in reaching its determination. Indeed, the court noted that it is "not bound by [the board's] findings because [the board is] not a court." Although the court acknowledged that it did consider the board's denials of the defendant's parole applications, the record reflects that it also considered other relevant factors, including the "seriousness of the offenses, [and] the impact on the victims and the victim's family." See *State* v. *Brelsford*,

supra, 227 Conn. App. 63 ("[t]he court's consideration of all of these factors was consistent with the broad discretion afforded to courts in ruling on [applications for] . . . sentence modification"). Consideration of these factors is precisely "the type of broad inquiry that [both this court and our Supreme Court] have deemed appropriate in sentencing determinations." *State* v. *Dupas*, supra, 291 Conn. 784. Accordingly, we are not persuaded that the trial court abused its discretion when it considered, among other factors, the board's denials of parole.

Finally, the defendant argues that his present circumstances required the trial court to grant his application for modification. We are not persuaded.

As discussed, a trial court has broad discretion when determining whether to modify a defendant's sentence, and the defendant's individual characteristics, such as his mental impairment, health and age, and personal development, although relevant to the court's sentencing decision, are not determinative. In the present case, the court had before it information regarding the defendant's past,[9] his intellectual disability, his current physical condition, his remorse following the crimes, and his counsel's argument that, given the defendant's age, denying the defendant's modification would essentially "condemn him to a de facto death sentence." The court also was presented with information regarding the nature and severity of both the murder and the second death the defendant caused when he fled the crime

---

[9] "[The defendant] spent time living in an orphanage and then at the Southbury Training School growing up. During [the defendant's] school years he was diagnosed with an intellectual disability and severely bullied in school because of it. He did not learn how to read or write and was ultimately expelled from school. After being diagnosed with [an intellectual disability], [the defendant] was transferred to Willowbrook School until he was approximately eleven years old . . . before [Willowbrook School] was exposed for its inhuman conditions."

scene in a stolen vehicle, as well as the statement of the victim's advocate that a family member of one of the defendant's victims strongly opposed the modification to the defendant's sentence.

The court also had the opportunity to consider Meisler's psychological report. Although Meisler opined that, given the defendant's age, health, and a lack of violent behavior and disciplinary infractions for many years, the defendant's "risk of recidivism [was] lower than it was even ten years ago and dramatically lower than it was at the time of the offense," Meisler also noted that a "full behavioral and psychiatric history" was not available to him when he prepared his report. Meisler's report also noted that the defendant exhibited poor social judgment and impulse control, at times became irritated with Meisler during the evaluation, and that his "insight and judgment remain very poor." Meisler's conclusion was that, "[a]lthough [the defendant] is unlikely to be a danger to others, his poor social judgment and impulse control could make him vulnerable to harm from others and, as such, he would best be served by reasonably close supervision in a residential setting."

It was within the court's discretion to weigh all of the information before it to determine whether the defendant established good cause to justify a modification of his sentence. The court concluded that the circumstances the defendant presented in support of his application did not rise to the level of good cause in light of "the seriousness of the offenses, the impact on the victim's family, and . . . the fact that the board[10]

---

[10] The defendant additionally asserts that the court's "reliance on the [board's] 'denial' being manifestly erroneous, the remaining grounds enumerated by the court, the seriousness of the offense and the impact on the victims and their families" were unaltered since the original sentencing, such that the trial court failed to acknowledge any changes since the defendant's original sentencing. Because we conclude that it was not improper for the court to consider the board's denial of the defendant's application for release, this argument necessarily fails. In addition, it is within the court's discretion

. . . denied [the defendant's] application for release on an indeterminate sentence, notwithstanding the fact that he has [served] in excess of the twenty-five year mandatory minimum." In light of the information available to the trial court, we cannot conclude that the court abused its broad discretion in weighing the relevant sentencing factors. See *State* v. *Reyes*, 229 Conn. App. 121, 128, 326 A.3d 589 ("[t]he court's weighing of factors is consistent with the broad discretion afforded to it in ruling on a[n] [application] . . . for sentence modification"), cert. denied, 350 Conn. 934, 327 A.3d 385 (2024); *State* v. *Martin G.*, 222 Conn. App. 395, 406, 305 A.3d 324 (2023) ("the court conducted an appropriate review of the information before it and determined that the gravity of the defendant's conduct, and its continuing effect on the victim and her family, outweighed the rehabilitative efforts he has undertaken since his incarceration"), cert. denied, 348 Conn. 944, 308 A.3d 34 (2024).

The judgment is affirmed.

In this opinion the other judges concurred.

———————————

to determine the weight to attach to each sentencing factor. See *State* v. *Brelsford*, supra, 227 Conn. App. 63.