******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* JEFFREY BARNES
### (AC 46513)

Bright, C. J., and Elgo and Cradle, Js.

*Syllabus*

The defendant, who had previously been convicted, following a guilty plea, of, inter alia, the crime of burglary in the second degree, filed a motion for sentence modification pursuant to statute (§ 53a-39 (a)). Although the defendant was living at a halfway house at the time he filed his motion, by the time of the hearing before the trial court the defendant was on special parole. The court dismissed the motion, finding that, because the defendant was on special parole, the court lacked subject matter jurisdiction to hear the motion. On the defendant's appeal to this court, *held* that, although the trial court properly determined that the defendant was not entitled to a modification of his sentence pursuant to § 53a-39 (a) because he was no longer serving an "executed period of incarceration," the form of the judgment was improper; because the language of § 53a-39 (a) providing that a trial court may act "at any time during an executed period of incarceration" is a limit to the court's statutory authority, not its subject matter jurisdiction, the court should have denied the defendant's motion rather than dismissed it.

Argued May 30—officially released September 3, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of burglary in the second degree, criminal mischief in the third degree, threatening in the second degree, and assault of an elderly person in the second degree, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, where the defendant was presented to the court, *Williams, J.*, on a plea of guilty to burglary in the second degree; judgment of guilty in accordance with the plea; thereafter, the state entered a nolle prosequi as to the remaining charges; subsequently, the court, *Schuman, J.*, dismissed the defendant's motion for sentence modification, and the defendant appealed to this court. *Improper form of judgment*; *reversed*; *judgment directed.*

*Chad L. Edgar*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Edward R. Azzaro*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Jeffrey Barnes, appeals from the judgment of the trial court dismissing, for lack of subject matter jurisdiction, his motion for modification of his sentence pursuant to General Statutes § 53a-39 (a).[1] On appeal, the defendant claims that the court erred in determining that it did not have subject matter jurisdiction to hear the defendant's motion because he had been released on special parole and, therefore, was no longer serving "an executed period of incarceration" as prescribed by § 53a-39 (a). We conclude that the court improperly determined that it lacked subject matter jurisdiction to hear the defendant's motion but correctly concluded that the defendant was not entitled to relief under § 53a-39 (a) because he was no longer serving an "executed period of incarceration." The form of the judgment is improper, as the court should have denied rather than dismissed the motion. Accordingly, we reverse the judgment dismissing the defendant's motion for modification and remand the case with direction to deny that motion.

The following procedural history is relevant to our resolution of this appeal. In 2017, the defendant pleaded guilty to one count of burglary in the second degree in

---

[1] General Statutes § 53a-39 (a) provides: "Except as provided in subsection (b) of this section, at any time during an executed period of incarceration, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced."

violation of General Statutes § 53a-102 and three counts of burglary in the third degree in violation of General Statutes § 53a-103. On November 27, 2017, the court, *Williams, J.*, imposed a total effective sentence of six years of incarceration and five years of special parole.

On June 6, 2022, the defendant, through counsel, filed the present motion for sentence modification, seeking to have his sentence reduced to time served and either elimination of his special parole or a reduction of it to two years.[2] At the time he filed his application for sentence modification, the defendant was residing in The Open Hearth, a halfway house, in Hartford. By February 3, 2023, however, when the court, *Schuman, J.*, held a hearing on the defendant's motion for sentence modification, the defendant had been released on special parole. At the hearing, the court raised the question of "whether this is a motion within the meaning of paragraph (a) of [§ 53a-39] that would authorize the court at 'any time during an executed period of incarceration' to modify the sentence," explaining that, because the defendant "has completed his incarceration and is now on special parole," the court had "a question as to whether [it could] hear this motion because it's not 'any time during an executed period of incarceration.' " The court heard argument from the parties on this issue of subject matter jurisdiction and then issued an order for the parties to submit memoranda on it.

On March 1, 2023, after memoranda had been submitted by both parties, the court held a limited hearing on the question of whether it had subject matter jurisdiction to hear the defendant's motion for sentence modification. On March 9, 2023, the court issued a memorandum of decision, dismissing the defendant's motion for

_____

[2] On his motion, the defendant checked the box that indicated that he sought modification of his sentence by "suspending execution of the unexecuted portion of the jail sentence." He also asked that his sentence be modified by "re-sentencing the defendant to a total effective sentence of time served and changing special parole to probation."

sentence modification. In so doing, the court noted that "[t]here is no statutory definition of the phrase 'executed period of incarceration.' . . . The term 'executed' in the phrase 'executed period of incarceration' generally refers to the time when the defendant is in custody, as opposed to 'unexecuted' or 'suspended,' when a defendant is released on probation or conditional discharge. . . . The ordinary meaning of the term 'incarceration' is 'confinement in a jail or prison.' " (Citations omitted.) The court then concluded that, "when read as a whole, the phrase 'executed period of incarceration' refers to a time when a person is in custody in a jail or prison" and that "that period of time does not include the time when a person is released on special parole."

The court also noted, however, that subsection "(a) of § 53a-39, under which this case arises, stands in contrast to [subsection] (b), pursuant to which a court has authority to modify a sentence at any time during *the period of a sentence* in which a defendant has been sentenced prior to, on or after October 1, 2021, to . . . an executed period of incarceration of more than seven years as a result of a plea agreement[3] . . . . [Subsection] (b) would apparently allow the court to modify a sentence while the defendant is on probation, conditional discharge, or special parole following a seven year or more term of incarceration. Although the reasoning for the different language used in [subsections]

---

[3] General Statutes § 53a-39 (b) provides: "On and after October 1, 2021, at any time during the period of a sentence in which a defendant has been sentenced prior to, on or after October 1, 2021, to an executed period of incarceration of more than seven years as a result of a plea agreement, including an agreement in which there is an agreed upon range of sentence, upon agreement of the defendant and the state's attorney to seek review of the sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced."

(a) and (b) is not clear or obvious, the court must construe the statute so that no word, phrase, or clause will be rendered meaningless." (Citation omitted; emphasis added; footnote added; footnotes omitted; internal quotation marks omitted.) The court, therefore, concluded that the differently worded subsections of the statute have different meanings and held that, "[b]ecause the defendant was on special parole and not incarcerated at the time that the court heard this motion . . . the court lacks jurisdiction to act on the motion." This appeal followed.

On appeal, the defendant challenges the court's interpretation of § 53a-39 (a). "The defendant's claim raises a question of statutory interpretation, over which our review is plenary. . . . Relevant legislation and precedent guide the process of statutory interpretation." (Citation omitted.) *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004). "[T]o ascertain and give effect to the apparent intent of the legislature . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute. . . . Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . [and] the legislative policy it was designed to implement . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Bischoff*, 337 Conn. 739, 746, 258 A.3d 14 (2021); see also General Statutes § 1-2z. "In determining whether the plain language of [a statute] leads to an absurd or

unworkable result, we are limited to considering its plain language and its relationship to other statutes." *State* v. *Bischoff*, supra, 759.

We have recognized that "[a] cardinal rule of statutory construction is that where the words of a statute . . . are plain and unambiguous the intent of the [drafters] in enacting the statute . . . is to be derived from the words used. . . . Where the court is provided with a clearly written rule, it need look no further for interpretive guidance. . . . It is our duty to interpret statutes as they are written. . . . Courts cannot, by construction, read into statutes provisions which are not clearly stated. . . . The legislature is quite aware of how to use language when it wants to express its intent to qualify or limit the operation of a statute." (Internal quotation marks omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 152, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016). "Simply put, [i]t is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Internal quotation marks omitted.) Id., 154.

The defendant, through his counsel, conceded at oral argument before this court that the language of § 53a-39 (a) "doesn't have a patent ambiguity" as to the phrase "an executed period of incarceration." The defendant acknowledges, and we agree, that "a plain reading of § 53a-39 (a) may lead to the conclusion that the movant must be incarcerated or otherwise under the jurisdiction of the Department of Correction during the entire course of the proceedings . . . ." He nevertheless challenges the court's interpretation of the statutory language on the ground that it "would collide with the spirit of the statute as a whole and the legislative history and circumstances that led to its recent amendment."[4]

[4] Section 53a-39 was amended by No. 21-102, § 25, of the 2021 Public Acts and by No. 22-36, § 1, of the 2022 Public Acts. These amendments expanded the authority of the court to grant certain motions for sentence modification.

He contends that "it is clear that [§ 53a-39] (a) is intended to be the more broadly inclusive provision that permits a wide range of movants to seek modification of their sentences. . . . In light of the clear intent of [§] 53a-39 (a), as amended, to provide a wide avenue of redress for defendants and the role of [§] 53a-39 (b) to provide a limited constraint thereto, it makes no sense that the legislature also intended [§] 53a-39 (b), as amended, to give courts broader jurisdiction to modify sentences than is the case under [§] 53a-39 (a)." (Citations omitted.) The defendant contends that, because "the amended version of [§] 53a-39 (a) was clearly intended to expand the previous version of [subsection] (a) in all respects, it must be that the legislature intended the court's jurisdiction to be at least as robust as in the previous version; therefore, it intended the court's jurisdiction to include . . . those movants . . . on . . . special parole." We disagree.

The language used by the legislature in § 53a-39 (b),[5] which provides for sentence modification "at any time during the period of a sentence in which a defendant has been sentenced," supports the conclusion that the legislature intended relief under § 53a-39 (a) to be more limited in that it demonstrates that the legislature knew how to broaden the window within which a defendant may seek relief if it intended to do so. In other words, if the legislature intended § 53a-39 (a) to apply to defendants on special parole, it knew how to effectuate that

Specifically, prior revisions of § 53a-39 (b) required defendants serving "a definite sentence of more than three years" to obtain agreement of the state's attorney before the court could rule on their motions for sentence modification. General Statutes (Rev. to 2021) § 53a-39 (b). Now, after the amendments in 2021 and 2022, only a defendant serving "an executed period of incarceration of more than seven years as a result of a plea agreement" must obtain such agreement. General Statutes § 53a-39 (b). In 2023, the legislature made further changes to § 53a-39 that are not relevant to this appeal. See Public Acts 2023, No. 23-47, § 1.

[5] The court held and the parties do not dispute that § 53a-39 (a) applies to the defendant's motion for sentence modification.

intent. Indeed, in amending § 53a-39 (a), the legislature could have replaced the "during an executed period of incarceration" language in § 53a-39 (a) to mirror the language that it used in § 53a-39 (b), but it chose not to do so. We therefore reject the defendant's argument that the language used in § 53a-39 (b) supports an expansive reading of the plain and unambiguous language of § 53a-39 (a).[6]

Further, subsections (a) and (b) of § 53a-39 apply in very different circumstances. Unlike § 53a-39 (a), § 53a-39 (b) applies only to defendants who have been sentenced to "an executed period of incarceration of more than seven years as a result of a plea agreement . . . ." In addition, § 53a-39 (b) requires the agreement of the state's attorney for the defendant to seek modification of his sentence. By contrast, the court has the authority to consider a motion to modify a sentence under § 53a-39 (a) even if the state's attorney opposes the motion. It is not absurd to infer that the legislature could reasonably have meant to grant the court broader authority to modify the sentences of defendants covered by § 53a-39 (b) because the state's attorney has agreed to the court's review of those sentences for modification. Because we cannot conclude that the plain and unambiguous language of § 53a-39 (a) leads to an absurd or unworkable result, we decline to consider extratextual sources. Accordingly, we conclude that the trial court properly determined that the defendant was not entitled

---

[6] The defendant also argues that, even if he was not entitled to relief under § 53a-39 as a special parolee, his eligibility should have been considered as of the date that he filed his motion for sentence modification, at which time he was in The Open Hearth halfway house. The court assumed that, at that time, the defendant was serving an "executed period of incarceration" because he was still in the custody of the Commissioner of Correction. See General Statutes § 18-100 (e). The language of § 53a-39 (a), however, is framed so as to provide when a court may afford relief and states that it may only do so during the time that a movant is serving an executed period of incarceration.

to a modification of his sentence under § 53a-39 (a) because he was no longer serving an "executed period of incarceration."[7]

We agree, however, with the defendant that the court improperly dismissed his motion for sentence modification for lack of subject matter jurisdiction. Our Supreme Court has "recognized the distinction between a trial court's jurisdiction and its authority to act under a particular statute. Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused

---

[7] The defendant also argues that "other trial courts have presided over proceedings where movants sought a sentence modification pursuant to [§] 53a-39 while on special parole" and cites to *State* v. *Farhad*, Docket No. CR-14-0125159-S, 2023 WL 2384806 (Conn. Super. February 14, 2023), as an example. In *Farhad*, the defendant was on special parole at the time of the court's ruling, but the court nonetheless denied his motion for sentence modification on the basis of his failure to establish good cause to modify his sentence, rather than on the basis of the court's lack of authority to grant the motion. Id., *2. We note, however, that, although subsection (a) of § 53a-39 would have been applicable to the defendant's claim in *Farhad*, given that he had been serving "a sentence of five years followed by five years of special parole" as the result of a negotiated plea; see id., *1; the court did not specify whether it was acting pursuant to § 53a-39 (a) or (b) in reviewing the defendant's motion. In fact, the court simply referenced § 53a-39 generally. It therefore is unclear if the question of the court's authority to modify the sentence of a special parolee was considered by the court in *Farhad*. We therefore cannot conclude that the court's decision in *Farhad* supports the defendant's position here. Moreover, any legal conclusions drawn by the trial court in *Farhad* are not binding on this court.

with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 463, 239 A.3d 272 (2020).

Our courts "consistently have held that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . [But] the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence. . . . After this occurs, the trial court has jurisdiction to modify or vacate the criminal judgment if the legislature or the state constitution grants continuing jurisdiction." (Citation omitted; internal quotation marks omitted.) *State* v. *Ward*, 341 Conn. 142, 149, 266 A.3d 807 (2021). "[T]he legislature has granted criminal courts continuing statutory authority to make changes to a duly imposed sentence in two ways. First, the legislature has authorized the courts to conduct sentence review pursuant to General Statutes § 51-196. Second, a criminal defendant may seek sentence modification of or discharge from his sentence pursuant to § 53a-39." (Footnotes omitted.) *State* v. *Martin G.*, 222 Conn. App. 395, 406–407, 305 A.3d 324 (2023), cert. denied, 348 Conn. 944, 308 A.3d 34 (2024).

Through the enactment of § 53a-39, the legislature has determined that a court has competence to entertain sentence modifications and, thus, has conferred upon the court jurisdiction to modify a sentence. The statutory language that a court may act "at any time during an executed period of incarceration" is a limit to the court's statutory authority, not its subject matter jurisdiction. Although we agree with the defendant that the trial court had subject matter jurisdiction over his motion to modify his sentence, we conclude that the court did not have authority to afford the defendant

relief under § 53a-39 (a) because he had been released on special parole and was no longer serving an executed period of incarceration. Accordingly, the court should have denied the defendant's motion, not dismissed it.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment denying the defendant's motion for sentence modification.

In this opinion the other judges concurred.