******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* ACKEEM RILEY
## (AC 48091)

Suarez, Clark and Seeley, Js.

*Syllabus*

The defendant, who previously had been convicted of murder and attempt to commit murder, among other crimes, appealed from the trial court's judgment denying his motion for sentence modification pursuant to statute (§ 53a-39). The defendant claimed, inter alia, that the court improperly failed to consider a reduction in sentence other than that requested by him in his motion for modification. *Held*:

The trial court did not erroneously refuse to consider a sentence reduction other than that requested in the defendant's motion for sentence modification, as nothing in the record suggested that the court failed to consider whether a more moderate sentence reduction was warranted, and the court's memorandum of decision indicated that the court was convinced that the sentence in place remained appropriate in light of all of the evidence presented.

The defendant's claim that the trial court required an admission of guilt as a predicate to granting his motion for sentence modification was not supported by the record, as the record indicated that the court did not conclude that the defendant could not establish good cause solely because he refused to accept responsibility for his crimes but, rather, determined that, even if the defendant had been fully rehabilitated, the principles of deterrence, retribution, incapacitation, and vindication of the interests of the victims all weighed in favor of denying the motion for modification.

The trial court did not abuse its discretion in concluding that there was no good cause to modify the defendant's sentence, as the court properly reviewed all of the relevant information before it, including the evidence presented by the defendant in connection with his motion and the factors considered by the sentencing judge, and reasonably determined that the defendant failed to establish good cause to modify his sentence.

Argued February 2—officially released May 5, 2026

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of attempt to commit murder and assault in the first degree, and with one count each of the crimes of murder and conspiracy to commit murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *O'Keefe, J.*; verdict and judgment of guilty, from which the defendant appealed to this court, *Beach*, *Alvord* and

*Borden, Js.*, which affirmed the trial court's judgment; thereafter, the defendant, on the granting of certification, appealed to the Supreme Court, which reversed this court's judgment and remanded the case to this court with direction to reverse the trial court's judgment as to the defendant's sentence and to remand the case to the trial court for a new sentencing proceeding; subsequently, the court, *O'Keefe, J.*, rendered judgment imposing sentence, from which the defendant appealed to this court, *Keller, Elgo* and *Bright, Js.*, which affirmed the trial court's judgment; thereafter, the court, *Hon. Carl J. Schuman*, judge trial referee, denied the defendant's motion for sentence modification, and the defendant appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (defendant).

*Rebecca Z. Oestreicher*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Robert Diaz*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

CLARK, J. The defendant, Ackeem Riley, appeals from the judgment of the trial court denying his motion for modification of his sentence pursuant to General Statutes § 53a-39. On appeal, the defendant claims that the trial court erred by (1) failing to consider a reduction in his sentence other than that requested by him in his motion for modification, (2) requiring an admission of guilt as a predicate to modifying his sentence, and (3) concluding that there was no good cause to modify his sentence. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts concerning the defendant's underlying convictions, as set forth by this court in *State* v. *Riley*, 140 Conn. App. 1, 58 A.3d 304 (2013), rev'd on other grounds, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied, 577 U.S. 1202, 136 S. Ct. 1361, 194 L. Ed.

2d 376 (2016), and procedural history are relevant to this appeal. "At approximately 6 p.m. on November 17, 2006, the defendant and his companion, Lasell Lewis, were driving a borrowed car in Hartford's North End. As they drove by a house on Garden Street, they thought they saw a male named Mike, who they believed was responsible for a gang related shooting on Vine Street the previous week. The defendant and Lewis circled back with the intention of exacting revenge and drove by the house again, this time firing a barrage of bullets into a crowd of people and hitting three young men.

"Tray Davis, a sixteen year old, died of gunshot wounds to his head and chest. Twenty-one year old Montrel Gage and thirteen year old Jaequan Sheppard-Ray were seriously injured but survived. Gage was shot in the back; the bullet was never extracted from his body. Sheppard-Ray was shot in the abdomen and sustained multiple life-threatening injuries. There was no suggestion that any of the three victims was involved in gang activity.

"The defendant was charged with six counts: one count of murder for the shooting of Davis; two counts each of attempted murder and first degree assault for the shootings of Gage and Sheppard-Ray; and one count of conspiracy to commit murder. Pursuant to General Statutes § 46b-127 (a), the defendant's case was automatically transferred from the juvenile docket to the regular criminal docket of the Superior Court. On March 3, 2009, after a five day trial, the jury returned a verdict of guilty on all charges." Id., 4–5. The trial court, *O'Keefe, J.*, imposed a total effective sentence of 100 years of imprisonment. Id., 7.

The defendant, who was seventeen years old at the time of the underlying crimes, appealed to this court, claiming that his sentence violated the eighth amendment to the United States constitution, as interpreted by the United States Supreme Court in *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which held that the eighth amendment prohibits the imposition of a sentence of life without parole on juvenile offenders

in the absence of "consideration of the offender's youth as mitigating against such a severe punishment . . . ." *State* v. *Riley*, 315 Conn. 637, 640, 110 A.3d 1205 (2015), cert. denied, 577 U.S. 1202, 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016).[1] After this court affirmed the trial court's judgment; *State* v. *Riley*, supra, 140 Conn. App. 21; our Supreme Court reversed, concluding that "the [trial] court must consider as mitigation the defendant's age at the time he committed the offenses and the hallmarks of adolescence that *Miller* deemed constitutionally significant when a juvenile offender is subject to a potential life sentence." *State* v. *Riley*, supra, 315 Conn. 641.[2]

On November 2, 2016, the defendant appeared before Judge O'Keefe for resentencing in accordance with our Supreme Court's remand order in *State* v. *Riley,* supra,

---

[1] As this court noted in the defendant's direct appeal, the parties did not dispute that the defendant's 100 year sentence was "tantamount to life in prison without the possibility of parole." *State* v. *Riley*, supra, 140 Conn. App. 3 n.2.

[2] The defendant also claimed that his sentence violated the eighth amendment to the United States constitution as interpreted by the United States Supreme Court in *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), which held that the eighth amendment "barred life imprisonment without the possibility of parole for juvenile nonhomicide offenders." *State* v. *Riley*, supra, 315 Conn. 640. Our Supreme Court declined to address that claim, noting that, although the defendant's murder conviction rendered him ineligible for parole under the statute in effect at the time; see id., 642–43 n.2; the legislature had been considering proposed legislation aimed at amending the General Statutes to comply with *Miller* and *Graham*. Id., 662. In 2015, the General Assembly enacted No. 15-84, § 1, of the 2015 Public Acts, which amended the parole statute, General Statutes § 54-125a, to provide parole eligibility for juveniles who are sentenced to more than ten years of imprisonment.

As a result of that amendment, General Statutes § 54-125a (f) (1) now provides in relevant part: "[A] person convicted of one or more crimes committed while such person was under eighteen years of age . . . may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. . . ."

315 Conn. 637. See *State* v. *Riley*, 190 Conn. App. 1, 7, 209 A.3d 646, cert. denied, 333 Conn. 923, 217 A.3d 993 (2019). At the resentencing hearing, the prosecutor presented new information to the court that was not available at the original sentencing, namely, that the defendant had pleaded guilty to two other shootings aside from the one underlying the present case: "a drive-by shooting [in May, 2006] that left a fifteen year old boy dead and, on a separate occasion, an incident [in January, 2007] where the defendant and others proceeded to unload twenty-four rounds at close range, resulting in one man's permanent paralyzation." (Internal quotation marks omitted.) Id., 31 n.13. Defense counsel presented mitigation evidence concerning the defendant's upbringing and his youth at the time of the offense. Id., 21–22. After hearing from the parties and noting the mitigating effect of the defendant's age at the time of the offense, Judge O'Keefe resentenced the defendant to a total effective term of seventy years of incarceration and noted his eligibility for parole pursuant to General Statutes § 54-125a. Id., 22; see footnote 2 of this opinion. Subsequently, the defendant appealed to this court, which affirmed the seventy year sentence. *State* v. *Riley*, supra, 190 Conn. App. 32. The defendant then applied for sentence review; see General Statutes § 51-195;[3] and the Sentence Review Division of the Superior Court affirmed the sentence imposed by Judge O'Keefe. *State* v. *Riley*, Superior Court, judicial district of Hartford, Docket No. CR-07-616727-T (January 28, 2020).

On or about January 11, 2024, the defendant filed the present motion for sentence modification, seeking to reduce his seventy year sentence to twenty-eight years of incarceration, which, if granted, would have made him eligible for a parole hearing pursuant to § 54-125a

[3] General Statutes § 51-195 provides in relevant part: "Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed . . . file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. . . ."

(f) on September 23, 2024. In support of his motion for modification, the defendant submitted a memorandum in which he argued that good cause existed for the sentence modification because he "changed significantly since the child that he was when he entered prison . . . ." The defendant also submitted numerous exhibits in support of his motion, including documentation of his successful completion of several rehabilitative programs and his graduation from the Yale Prison Education Initiative; letters from his family, friends, and peers; a psychological evaluation; a biopsychosocial report; and evidence of his good behavior and work experience while incarcerated.

The court, *Hon. Carl J. Schuman*, judge trial referee, conducted hearings on the motion for modification on June 25 and July 30, 2024.[4] The defendant provided a statement on his own behalf and presented statements from nine friends and family members in support of his motion. In his statement, the defendant discussed his pursuit of educational and other programs while incarcerated, how those programs impacted him and contributed to his rehabilitation, and his plans for housing, employment, and community service after his release. The defendant also expressed remorse for the victims of his crimes and acknowledged his responsibility for the two shootings to which he pleaded guilty, but he expressly did not acknowledge responsibility for the crimes for which he was convicted and sentenced in the present case. Rather, the defendant expressed remorse that his actions contributed to the environment that caused the shooting to occur. The defendant's counsel, relying on the defendant's rehabilitative efforts and history of good behavior while incarcerated, argued that there was good cause to modify the sentence because the defendant "has substantially changed" and "the purposes

[4] At the July 30, 2024 hearing, the court granted the defendant's motion to admit into the record all attachments to the motion for modification, as well as an audio recording of his resentencing and a video recording of a presentation in which the defendant advocated for increased educational opportunities for incarcerated individuals.

of [his] sentencing have been served." Counsel for the state opposed the defendant's motion, arguing that the defendant's accomplishments while incarcerated did not "[rise] to the level of good cause in this particular case" because of the number and severity of the defendant's crimes and the fact that he "continues to deny his culpability . . . [for] the murder that he is asking for the sentence modification."[5]

In a memorandum of decision dated August 5, 2024, the court, *Hon. Carl J. Schuman*, judge trial referee, denied the defendant's motion to modify his sentence. The court first noted that, "[i]n previous sentence modification cases, the court has attempted to consider whether any new legal or factual developments since the time of sentencing would justify a reduction of the trial court's sentence and whether the penalty at issue [still] promotes any of the penal goals that courts and commentators have recognized as legitimate: deterrence, retribution, incapacitation, and rehabilitation." (Internal quotation marks omitted.) The court then began its analysis by commending the defendant's rehabilitative efforts, noting that "[t]here is no question that the defendant is a changed man . . . has become educated . . . is remorseful . . . and now wants to help others" and that his "progress is impressive and commendable." The court further noted, however, that because the defendant "maintains that he was not present at th[e] shooting and did not know about it until after it happened . . . [he] still does not accept full responsibility for the crimes in this case . . . . Given that the defendant has not fully accepted responsibility for shooting three individuals and killing one of them, the court must conclude that the defendant is not fully rehabilitated." (Internal quotation marks omitted.)

The court further determined that, "even if the defendant were fully rehabilitated, there are other purposes that the sentence still serves. One of those purposes is

[5] Counsel for the state also notified the court that it had made contact with Gage and the family of Davis, all of whom indicated that they did not wish to be heard. Counsel further noted that the state had attempted to contact Sheppard-Ray but was unable to reach him.

to vindicate the interests of victims." The court noted that "[t]he mandatory minimum sentence for murder is twenty-five years"[6] and that, "[i]f the court were to grant the defendant's motion and reduce his sentence to twenty-eight years, the effect would be to impose the minimum sentence of twenty-five years for the murder conviction and, following Judge O'Keefe's approach, two consecutive sentences of one and one-half years for the shootings of [Gage] and [Sheppard-Ray]. Wholly apart from the propriety of reducing the sentence for the murder of [Davis] to the minimum of twenty-five years, a sentence of one and one-half years for shooting Gage and Sheppard-Ray, whom the defendant seriously injured, does not adequately recognize the sanctity of their human life and health."

The court also determined that "[t]he other purposes of sentencing—deterrence, retribution, and incapacitation—are more closely vindicated by a seventy year sentence than a twenty-eight year sentence. The defendant's crimes were heinous, taking the life of one young man and seriously wounding two others. Unfortunately, the defendant has taken other lives and left other people wounded. These actions deserve significant punishment and incapacitation. To deter the defendant and others, a long sentence is important."

The court next observed that "[t]his case is unusual in that the Appellate Court . . . specifically affirmed the sentence imposed by Judge O'Keefe. Although the Appellate Court's focus was on the legality of the sentence at the time rather than whether there is good cause to modify it now, the court's affirmance of [the defendant's] sentence reassures the court today that Judge O'Keefe considered all the appropriate factors and imposed an acceptable sentencing decision in a difficult case. . . . Other than rehabilitation, which the defendant has not fully achieved, the sentencing considerations are the same now as those that Judge O'Keefe considered. The court sees no reason to reevaluate them or to second-guess

---

[6] See General Statutes §§ 53a-35a (2) and 53a-54a (c).

Judge O'Keefe." The court therefore rendered judgment denying the defendant's motion. This appeal followed. Additional facts will be set forth as necessary.

Before addressing the merits of the defendant's claims, we begin by setting forth the relevant legal principles and standard of review that govern our resolution of the defendant's appeal. "[A] criminal defendant may seek sentence modification of or discharge from his sentence pursuant to § 53a-39." (Internal quotation marks omitted.) *State* v. *Barnes*, 227 Conn. App. 760, 770, 323 A.3d 1166, cert. denied, 350 Conn. 922, 325 A.3d 1093 (2024). Section 53a-39 (a) provides in relevant part: "[A]t any time during an executed period of incarceration, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced."

"[I]n arriving at its sentencing determination, the sentencing court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . [T]his broad discretion applies with equal force to a sentencing court's decision regarding a sentence modification . . . . Accordingly, we review a court's judgment granting or denying a motion to modify a sentence for abuse of discretion. . . . An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . As such, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Generally speaking, under this deferential standard, [w]here the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion." (Internal quotation marks

omitted.**)** *State* v. *Brelsford*, 227 Conn. App. 53, 61, 319 A.3d 763, cert. denied, 350 Conn. 912, 324 A.3d 142 (2024).

I

The defendant first claims that the trial court erred in refusing to consider a reduction in his sentence other than that specifically requested in his motion. He argues that the court "refus[ed] to consider a sentence between the twenty-eight years requested and the seventy years imposed" and that, "[b]y proceeding as if those were the only two sentencing options available, the court abused its discretion, to the extent the court exercised any discretion at all, in determining an appropriate sentence for [the defendant]." We disagree with the defendant's claim.

The following additional procedural history is relevant to this claim. In his motion for a sentence modification, the defendant requested that the court "reduce [his sentence] to a [total effective sentence] of twenty-eight years." In a letter to the court accompanying the motion, the defendant's counsel explained that the defendant was asking the court "to reduce his sentence . . . to a total effective sentence of twenty-eight years" so that he "would be eligible for . . . parole release [pursuant to § 54-125a (f)] on September 25, 2024."

At the outset of the June 25, 2024 hearing on the defendant's motion, the court noted that there were "a few . . . things . . . [that] will necessitate a second day of hearings in this matter." The court then noted that, although the defendant's counsel had submitted a letter with the motion, that letter "seems to me to raise more questions than it answers" and that "there's been no memorandum filed by the defendant . . . that summarizes the procedural background, other convictions, other cases . . . [and][e]xactly what the defendant is seeking in this case." The court then ordered the defendant to file

such a memorandum and noted that a continuance date would be scheduled at the end of the first hearing date.

On July 30, 2024, the defendant filed a memorandum in support of his motion, as ordered by the court. In that memorandum, the defendant reiterated that his "request is to reduce his . . . total effective sentence [to] twenty-eight years . . . [so that] he would be eligible for . . . parole release on September 23, 2024." During the hearing that same day, after the defendant's counsel delivered her argument in support of the defendant's motion, the court asked counsel whether she "acknowledge[d] . . . that you're making a big ask, reducing a sentence of seventy years to twenty-eight? And then, it would be up to the parole board to further reduce it to, essentially, eighteen. But even without that: you acknowledge that that is a big ask?" Counsel responded: "Yes, Your Honor." The defendant did not ask the court to consider a more modest sentence reduction if it concluded that he failed to establish good cause to reduce his sentence to twenty-eight years as he requested.

As indicated previously, in its memorandum of decision, the court rejected the propriety of a twenty-eight year sentence because it determined that such a reduction would "not adequately recognize the sanctity of [the victims'] human [lives] and health" and that "[t]he other purposes of sentencing—deterrence, retribution, and incapacitation—are more closely vindicated by a seventy year sentence than a twenty-eight year sentence." On appeal, the defendant argues that this portion of the memorandum of decision indicates that the court "insist[ed] that it could only consider a reduction in sentence to the requested twenty-eight years . . . ." Noting that § 53a-39 (c) contemplates that a motion for sentence modification may be granted "in part,"[7] the defendant

---

[7] General Statutes § 53a-39 provides in relevant part: "(c) . . . If, after a hearing pursuant to this section, the sentencing court or judge grants *in part* a motion to reduce a defendant's sentence, the defendant may not file a subsequent motion for relief under this section until three years from the date of the most recent decision granting such defendant relief pursuant to this section. . . ." (Emphasis added.)

argues that the court's concerns as to the propriety of a twenty-eight year sentence "[did] not compel the court to deny the modification and affirm the seventy year sentence" and that the court erred by refusing to consider a more moderate sentence reduction.

We conclude that the record does not support the defendant's claim that the court refused to consider whether a more moderate sentence reduction was warranted.[8] "It is well settled that [we] do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.) *White* v. *Latimer Point Condominium Assn., Inc.*, 191 Conn. App. 767, 780–81, 216 A.3d 830 (2019). "[A] judicial opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *Tracey* v. *Miami Beach Assn.*, 216 Conn. App. 379, 395, 288 A.3d 629 (2022), cert. denied, 346 Conn. 919, 291 A.3d 1040 (2023). Moreover, "[t]o the extent that the trial court's memorandum of decision may be viewed as ambiguous . . . we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 198 Conn. App. 345, 357 n.4, 233 A.3d 1106, cert. denied, 335 Conn. 948, 238 A.3d 18 (2020).

Here, and with these principles in mind, we conclude that a fair reading of the memorandum of decision does not support the defendant's claim that the court did not consider a sentence reduction that was more modest than what the defendant requested. Although the court expressly addressed the propriety of reducing

---

[8] The defendant argues that, because his claim raises a question concerning the proper interpretation of § 53a-39, our review is plenary. Because we conclude that the record does not support the defendant's claim that the court refused to consider a sentence reduction other than the one that he requested, we need not address the defendant's statutory interpretation argument.

the defendant's sentence to twenty-eight years as he requested, the court did not rest its decision solely on a comparative analysis of the sentence sought by the defendant and the one imposed by Judge O'Keefe. Rather, the court went on to determine that the defendant's "actions deserve significant punishment and incapacitation," that "a long sentence is important" in this case in order "[t]o deter the defendant and others," and that, "[o]ther than rehabilitation, which the defendant has not fully achieved, the sentencing considerations are the same now as those that Judge O'Keefe considered." Thus, the court determined that the considerations that informed Judge O'Keefe's sentencing decision continued to remain important and relevant, which indicates that the court concluded that the seventy year sentence remained appropriate and, consequently, that there was no good cause to reduce the defendant's sentence.

Contrary to the defendant's contention, nothing in the record suggests that the court failed to consider whether a more moderate sentence reduction was warranted. As we explained previously, the defendant repeatedly requested that the court reduce his sentence to twenty-eight years, specifically explained the reason for that request, and never requested that the court consider modifying his sentence in any manner other than in accordance with his request. In light of the defendant's repeated and specific request that the court reduce his sentence to twenty-eight years, it was entirely reasonable for the court to articulate why it determined that such a reduction was not appropriate. That does not, however, mean that the court believed that it lacked the discretion to order a more moderate sentence reduction if it determined there was good cause to do so. Rather, read in its entirety, the memorandum of decision indicates that the court was convinced that a seventy year sentence remained appropriate in light of all of the evidence presented. "Because the record can be read to support the court's conclusion that the [defendant] failed to meet his burden, [he] has failed to demonstrate that the court erred." *White* v. *Latimer Point Condominium Assn., Inc.*,

supra, 191 Conn. App. 781. Accordingly, we reject the defendant's claim that the court erred by refusing to consider a sentence reduction other than that requested in his motion.

II

The defendant next claims that the trial court erred by requiring an admission of guilt as a predicate to granting his motion for sentence modification. Although the defendant's counsel acknowledged during oral argument before this court that a trial court properly may consider a defendant's failure to accept responsibility as a factor in determining whether there is good cause to modify a sentence, she argued that the court in the present case treated his failure to admit guilt as a "prohibitive finding" that precluded a finding of good cause. The defendant argues that, because § 53a-39 "does not exclude defendants who have persisted in a plea of not guilty from establishing good cause for modification of their sentence . . . the trial court is not entitled to implement such a prohibition."[9]

We disagree with the defendant's claim because the record does not support his contention that the court

[9] In his appellate brief, the defendant also contended that "[f]or the trial court to now hold that [he] is unable to establish good cause for a modification, despite his significant postconviction rehabilitation but absent an admission of guilt, would be a violation of due process." He did not, however, separately brief a distinct due process claim. Moreover, during oral argument before this court, the defendant's counsel expressly acknowledged that the defendant did not raise a due process claim but, rather, argued that § 53a-39 cannot be interpreted to require an admission of guilt because such an interpretation would lead to an unconstitutional result. Because we conclude that the court did not require the defendant to admit guilt as a predicate to granting his motion for sentence modification, we need not further address his contention that doing so would violate his right to due process. In any event, any such claim would be foreclosed by our Supreme Court's decision in *State* v. *Angel M.*, 337 Conn. 655, 255 A.3d 801 (2020), which held that, although "[p]rinciples of due process . . . forbid a court from retaliating against a defendant by increasing his sentence merely because [he] exercise[d] [a statutory or constitutional] right," a sentencing court "is not prohibited from denying leniency to a defendant who elects to exercise [such a] right." Id., 669.

denied his motion because he refused to admit guilt. Indeed, although the court determined that the defendant was "not fully rehabilitated" because he "has not fully accepted responsibility for [his crimes]," the court went on to explain that, "even if the defendant were fully rehabilitated, there are other purposes that the sentence still serves." The court reasoned that a reduction in the sentence to twenty-eight years would "not adequately recognize the sanctity of [the victim's] human life"; that "[t]he defendant's crimes," which included "taking the life of one young man and seriously wounding two others," were "heinous" and "deserve significant punishment and incapacitation"; and that, "[t]o deter the defendant and others, a long sentence is important." Thus, the court did not conclude that the defendant could not establish good cause solely because he refused to accept responsibility but, rather, determined that, even if the defendant were fully rehabilitated, the principles of deterrence, retribution, incapacitation, and vindication of the interests of the victims all weighed in favor of denying the motion for modification. Accordingly, we reject the defendant's claim that the court erred by predicating its denial of the motion for modification on the defendant's failure to accept responsibility for his crimes.

### III

The defendant's final claim is that the trial court abused its discretion in concluding that there was no good cause to modify his sentence. Specifically, the defendant argues that the court "abdicat[ed] [its] responsibility . . . to determine whether good cause for a sentence modification now exists" and, instead, "simply review[ed] the propriety of the sentence imposed by Judge O'Keefe nearly a decade prior." He further argues that his "demonstrable rehabilitation" was sufficient to establish good cause and that the court's conclusion to the contrary constituted an abuse of its discretion. The state argues that the trial court "properly considered the entire record in

determining that the defendant . . . failed to show good cause." We agree with the state.

Our review of the record convinces us that the court properly reviewed all of the relevant information presented over the course of the two day modification hearing and reasonably concluded that the defendant failed to establish good cause to modify his sentence. The court expressly acknowledged and commended the defendant's rehabilitative efforts, noting that he "earn[ed] a college degree while in prison," "has taken and benefitted from numerous prison rehabilitative programs," and, despite not accepting responsibility for the crimes underlying his sentence in the present case, "is remorseful for those he hurt in the past and now wants to help others." The court also acknowledged the numerous friends, family, and others who wrote letters of support or spoke on his behalf at the hearing and commented that "[t]he defendant's progress is impressive and commendable." As discussed in part II of this opinion, however, the court concluded that other considerations, including the severity of the crimes, the need for general and specific deterrence, and the impact on the victims, outweighed the defendant's rehabilitative efforts.

We disagree with the defendant's contention that the court, by discussing the factors considered by Judge O'Keefe at sentencing, "abdicat[ed] [its] responsibility pursuant to § 53a-39 to determine whether good cause for a sentence modification now exists." The defendant appears to argue that, by discussing those factors, the court conducted what amounts to a sentence review pursuant to General Statutes § 51-194 et seq. and Practice Book § 43-23 et seq., rather than applying the good cause standard pursuant to § 53a-39. He argues that, unlike a sentence review, which is "limited to a determination as to whether the sentence was appropriate or disproportionate in light of the circumstances existing at the time the sentence was imposed,"[10] a motion for sentence

---

[10] See Practice Book § 43-28 ("[t]he [sentence] review division shall review the sentence imposed and determine whether the sentence should

modification requires "a contemporary assessment of whether the sentence continues to vivify the penological objectives." He further argues that the trial court improperly failed "to determin[e] whether, years later, good cause exists to modify the sentence imposed by Judge O'Keefe."

The memorandum of decision makes clear, however, that the court, in examining the factors considered by Judge O'Keefe, did not merely review the propriety of the seventy year sentence at the time it was imposed. Rather, it considered those factors in analyzing whether the information presented by the defendant established good cause to modify that sentence. As the court explained, in determining whether the defendant established good cause, the court considered (1) "whether any new legal or factual developments since the time of sentencing would justify a reduction of the trial court's sentence," and (2) "whether the penalty at issue [still] promotes any of the penal goals that courts and commentators have recognized as legitimate: deterrence, retribution, incapacitation, and rehabilitation."[11] (Internal quotation marks omitted.) After assessing the evidence presented by the defendant and discussing the factors considered by Judge O'Keefe, the court concluded that, "[o]ther than rehabilitation, which the defendant has not fully achieved, *the sentencing considerations are the same now as those that Judge O'Keefe considered.*" (Emphasis added.) Put differently, the court determined that there was no good cause to reduce the defendant's sentence because no "new legal or factual developments . . . justif[ied] a reduction of [the defendant's] sentence," and a seventy year sentence "[still] promotes . . . the

be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended").

[11] See *State* v. *Santiago*, 318 Conn. 1, 22, 122 A.3d 1 (2015) ("the penal goals that courts and commentators have recognized as legitimate [are] deterrence, retribution, incapacitation, and rehabilitation").

[legitimate] penal goals" that informed Judge O'Keefe's sentencing decision.

It is not an abuse of discretion for a court considering a motion for sentence modification to assess the factors that existed at the time the sentence was imposed, such as the severity of the crime and the impact on the victims, and to conclude that those factors outweigh the evidence presented by the defendant at the modification hearing. Indeed, this court has held that a "court's weighing of [such] factors is consistent with the broad discretion afforded to it in ruling on a motion for sentence modification." *State* v. *Reyes*, 229 Conn. App. 121, 128, 326 A.3d 589, cert. denied, 350 Conn. 934, 327 A.3d 385 (2024); see id. (court's determination "that the devastation and harm resulting from the seriousness of the defendant's conduct and the fact that he had only served less than one third of his sentence outweighed his rehabilitative efforts . . . is consistent with the broad discretion afforded to it in ruling on a motion for sentence modification" (internal quotation marks omitted)); see also, e.g., *State* v. *Dupas*, 291 Conn. 778, 785–86, 970 A.2d 102 (2009) ("[i]t was not an abuse of discretion for the court to rely on the horrific nature of [the] crime in denying the defendant's motion for modification . . . [because] [t]his information was just as relevant at the modification hearing as it was during the defendant's original sentencing"); *State* v. *Browne*, 238 Conn. App. 753, 770, A.3d (2026) ("it is clear from the court's memorandum of decision that it did consider the defendant's rehabilitation but found that the defendant did not establish good cause in light of other factors, including the serious nature of his crimes"); *State* v. *Martin G.*, 222 Conn. App. 395, 406, 305 A.3d 324 (2023) (court properly "determined that the gravity of the defendant's conduct, and its continuing effect on the victim and her family, outweighed the rehabilitative efforts he has undertaken since his incarceration"), cert. denied, 348 Conn. 944, 308 A.3d 34 (2024). Thus, the court properly reviewed all of the relevant information before it, including the evidence presented by the defendant in connection with his motion

and the factors considered by Judge O'Keefe at sentencing, and reasonably determined that the defendant failed to establish good cause to modify his sentence. In light of the broad discretion afforded to trial courts in ruling on motions for sentence modification, we conclude that the court did not abuse its discretion in determining that there was no good cause to modify the defendant's sentence.

The judgment is affirmed.

In this opinion the other judges concurred.